[600 NYS2d 957]

In the Matter of NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES, on Behalf of OSCAR C., JR., and Another, Respondent, v OSCAR C., Appellant.

Second Department, August 2, 1993

### APPEARANCES OF COUNSEL

*Feldman & Feldman,* Hauppauge *(Arza Rayches Feldman* of counsel), for appellant.

*O. Peter Sherwood, Corporation Counsel* of New York City *(Leonard Koerner* and *Ellen B. Fishman* of counsel), for respondent.

*Lenore Gittis,* New York City *(Kenneth Rabb* of counsel), *Law Guardian,* for infants.

### OPINION OF THE COURT

PIZZUTO, J.

The question to be answered is whether the Family Court erred in applying the "preponderance of the evidence" stan-

dard of proof in its fact-finding phase of this Family Court Act article 10 child neglect proceeding (which involved two children of Eskimo heritage), while applying the more stringent "clear and convincing" evidence standard in the dispositional phase. The issue presented appears to be one of first impression in this State. We hold that the Family Court properly applied the dual burden of proof.

This case has a history in the Queens County Family Court dating back to early 1986. Mrs. Beverly C. is the natural mother of the subject children, Beverly C. and Oscar C., Jr., ages 9 and 7, respectively. She had been residing in New York with the appellant father and the two children. During the pendency of a prior Family Court child protective proceeding, she left the marital home in New York to return to her Alaska Native Indian community, leaving the children with the appellant, who is not Indian.

The Family Court made a finding of neglect, based upon a preponderance of the evidence, against the appellant grounded upon his failure to provide adequate shelter for the children. Subsequently, the court determined, based upon clear and convincing evidence, at the dispositional phase of the proceeding, that his custody of the children was likely to result in serious emotional and physical damage, and required their placement with their maternal grandmother in Alaska in foster care for a period of 12 months.

On appeal, the appellant contends, *inter alia,* that the dual *burdens of proof were improper because the New York State* law is preempted by Federal law and the Federal Indian Child Welfare Act of 1978 (25 USC § 1901 *et seq.* [hereinafter the ICWA]) mandates use of a "clear and convincing" standard.

■ At the outset, we conclude that the court properly determined that the children, by reason of their Native Alaskan mother, were Indian children within the purview of the ICWA. The ICWA defines an Indian child as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe" (25 USC § 1903 [4]). " 'Indian tribe' means any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary * * * including any Alaska Native Village" (25 USC § 1903 [8]). The subject children's biological mother, Beverly C., is a member of the Native

Village of Twin Hills, an Alaska Native community (hereinafter the Tribe). As the biological children of Beverly C., Oscar C., Jr., and Beverly C. are also members of the Tribe. As a result, the C. children properly fall within the definition of Indian children under ICWA (see, Matter of T.N.F., 781 P2d 973 [Ala], cert denied sub nom. Jasso v Finney, 494 US 1030).

Necessary to our determination of the issue of preemption is a review of the applicable State and Federal laws.

### THE NEW YORK LAW

■ Pursuant to Family Court Act article 10, child protective proceedings consist of two discrete independent phases: a fact-finding hearing and a dispositional hearing. Family Court Act § 1044 defines "fact-finding hearing" as "a hearing to determine whether the child is an abused or neglected child as defined by this article", while Family Court Act § 1045 defines "dispositional hearing" as "a hearing to determine what order of disposition should be made". Family Court Act § 1012 (e) and (f) provide specific grounds for finding abuse or neglect of a child, including failure of his parent to exercise a minimum degree of care in supplying the child with adequate food, clothing, or (as in this case) shelter. The standard of proof applicable to this finding must be based on a "preponderance of the evidence" (Family Ct Act § 1046 [b] [i]).

Following a finding of abuse or neglect, a dispositional proceeding must also be held (Family Ct Act § 1052) to determine whether the child may safely remain in the parent's custody or whether the child must be removed and placed outside of the home. Unlike the focus at the fact-finding proceeding on the prior conduct of the parent, the dispositional hearing is concerned with the future protection and best interests of the child.

In Matter of Tammie Z. (66 NY2d 1, 3) the New York Court of Appeals decided that in a "fact-finding hearing to determine whether a child is abused or neglected, the provision of Family Court Act § 1046 (b) that a finding of neglect 'must be based on a preponderance of the evidence' affords due process under the Federal Constitution". It distinguished Santosky v Kramer (455 US 745, 748), which held that the constitutionally required quantum of proof in proceedings to terminate parental rights under Family Court Act article 6 (permanent neglect proceeding) is "clear and convincing evidence". The Court described the "clear and convincing evidence" standard

as an "intermediate standard" *(supra,* at 756) between the high standard of "beyond a reasonable doubt" used in criminal proceedings and "fair preponderance" used in ordinary civil proceedings. The *Tammie Z.* Court noted that in an article 10 proceeding, the maximum initial period of placement is 18 months, unlike a permanent neglect proceeding which may result in termination of the natural parents' rights in the child, and denial of physical custody, as well as the right ever to visit, communicate with, or regain custody of the child. Therefore, a greater burden of proof is required in a permanent neglect proceeding than in an article 10 proceeding.

### FEDERAL LAW

Congress adopted the Indian Child Welfare Act of 1978 (25 USC §§ 1901-1963), to preserve the continued existence and integrity of Indian tribes by preventing the unwarranted removal of Indian children by State administrative and judicial bodies through a failure to recognize and appreciate the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families (25 USC § 1901 [4], [5]). In particular, Congress was concerned with outright bias against Indians by State social workers as well as the more subtle problem of social workers untutored in the ways of Indian family life mistaking methods of raising and disciplining children with an extended Indian family for excessive permissiveness, neglect, or abandonment (HR Rep No. 1386, 95th Cong, 2d Sess 9, reprinted in 1978 US Code Cong & Admin News, at 7531-7532). Additionally, it found that the dependency of many Indian parents on State welfare agencies often resulted in coerced "voluntary" placements of Indian children.

Congressional policy is clearly set forth in 25 USC § 1902, which reads: "The Congress hereby declares that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to the Indian tribes in the operation of child and family service programs".

Also relevant to our discussion is 25 USC § 1921, which

provides: "In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this title, the State or Federal court shall apply the State or Federal standard".

The ICWA precludes the placement of an Indian child in foster care unless the determination is supported by clear and convincing evidence that "the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child" (25 USC § 1912 [e]). In contrast, 25 USC § 1912 (f) precludes the termination of parental rights unless supported by evidence beyond a reasonable doubt that the "continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child".

Foster care placement is defined in 25 USC § 1903 (1) (i) as "any action removing an Indian child from its parent * * * for temporary placement in a foster home * * * where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated".

We note that 25 USC § 1912 (a) requires that, in a proceeding involving foster care placement of an Indian child (or termination of parental rights), notice of the proceeding be given to the Indian child's tribe and of its right to intervene pursuant to 25 USC § 1911 (c). In this case, the children's Tribe did intervene.

### THE ISSUE OF PREEMPTION (SUPREMACY CLAUSE, US CONST, ART VI, § 2).

Federal legislation preempts State legislation when Congress expressly or impliedly intends to assert Federal primacy in a particular field or when State legislation conflicts with the Federal legislation (see, Wisconsin Pub. Intervenor v Mortier, 501 US —, —, 111 S Ct 2476, 2481-2482; Matter of Consolidated Edison Co. v Public Serv. Commn., 63 NY2d 424, appeal dismissed 470 US 1075).

Analysis under the Supremacy Clause, however, begins with the assumption that Congress did not intend to prohibit State action (see, Maryland v Louisiana, 451 US 725, 746; Chicago & N. W. Transp. Co. v Kalo Brick & Tile Co., 450 US 311, 317;

*Matter of Consolidated Edison Co. v Public Serv. Commn., supra).* We start "with the assumption that the States' historic powers are not superseded by federal law unless that is the clear and manifest purpose of Congress. That purpose may be expressed in the terms of the statute itself. Absent explicit preemptive language, congressional intent to supersede state law may nonetheless be implicit if, for example, the federal Act touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject * * * preemption may occur to the extent that state and federal law actually conflict, as when compliance with both is a physical impossibility, or when the state law stands as an obstacle to the accomplishment of Congress' purposes and objectives" *(Wisconsin Pub. Intervenor v Mortier,* 501 US, *supra,* at —, 111 S Ct, *supra,* at 2478).

### CONCLUSION

We conclude that the ICWA does not preempt those provisions of the New York State Family Court Act which are not in conflict with it, and, therefore, that the New York statutes can be read so as to harmonize them with ICWA. The policies behind both the Federal and State statutes are similar: to protect the best interests of the child and to preserve family stability, among other things.

As stated above, the fact-finding hearing and the dispositional hearing are two independent and separate parts of a child protective proceeding. The fact-finding hearing does not directly impact on the continued custody of the child by the parent or Indian custodian. The fact finding of neglect by a parent need not necessarily lead to the dispositional determination that a change of custody is required. The fact-finding proceeding does not culminate in a determination that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child (the required determination under 25 USC § 1912 which must be supported by clear and convincing evidence).

As noted above, the fact-finding hearing relates to the prior conduct of the parent, while in the dispositional hearing "the court should inquire into the capacities of the parent to properly supervise the children, and such inquiry should be based upon up-to-date examinations and investigations so that

a dispositional order appropriate to present conditions may be made" *(Matter of Debra VV,* 52 AD2d 960, 961; *Matter of Marsha B.F.,* 110 AD2d 549, 550).

Requiring a lesser burden of proof in the fact-finding phase gives greater protection to the interests of the child. As noted in *Matter of Tammie Z.* (66 NY2d 1, 4-5, *supra),* "In article 10 proceedings, however, an erroneous failure to place the child may have disastrous consequences. If abuse or neglect is not proved, the court must dismiss the petition (Family Ct Act § 1051 [c]). While the court may authorize temporary placement or protection (Family Ct Act § 1027 [a]), that placement or protection remains in effect only pending a final order of disposition, at which time the child is returned to the parents". Obviously, there is no determination as to ultimate placement until the dispositional phase is reached.

Clearly, the two independent parts of a child protective proceeding pursuant to Family Court Act article 10 involving fact-finding and dispositional phases were not envisioned (or disfavored) when Congress enacted the ICWA. Nevertheless when the Family Court applied the Federal "clear and convincing evidence" standard at the dispositional part of the proceeding, the respondent parent was accorded as much, if not greater protection, than is required by the Act.

The application of the New York preponderance of the evidence standard to the findings that the children were neglected as a result of their father's failure to provide adequate shelter pursuant to Family Court Act § 1046 (b) (i) does not conflict with 25 USC § 1912 (e). Congress neither expressed nor implied an intent within the ICWA to preempt State rules and procedures in child custody proceedings *(see, Matter of J.R.B.,* 715 P2d 1170, 1173 [Ala]; *In re D.S.P.,* 166 Wis 2d 464, 480 NW2d 234). Instead, the ICWA expressly calls for use of State law rather than the ICWA, if the State law "provides a higher standard of protection" than accorded by the ICWA (25 USC § 1921). In addition, the ICWA is not pervasive, or encompassing legislation, but rather sets forth minimum standards that must be followed according to congressional policy *(see, In re D.S.P., supra* [where State burden of proof as to abandonment determination was applied to ICWA case]; *see, e.g., Matter of T.N.F.,* 781 P2d 973, *supra* [where a State Statute of Limitations was applied to ICWA actions]).

For the foregoing reasons, we conclude that the Family

Court properly applied a dual burden of proof, the "preponderance of evidence" standard, mandated by our State law in the fact-finding hearing, and the "clear and convincing" standard, mandated by the ICWA in the dispositional hearing, all in consonance with the ICWA. There being no clear indication that State law should be abrogated, and indeed, good reasons not to, we decline to do so.

Similar conclusions have been reached by the Supreme Courts of Alaska and Wisconsin *(see, Matter of J.R.B., supra; In re D.S.P., supra)*.

We have reviewed the appellant's remaining contentions and find them to be without merit.

Accordingly, the order is affirmed, without costs or disbursements.

BRACKEN, J. P., BALLETTA and RITTER, JJ., concur.

Ordered that the order is affirmed, without costs or disbursements.