Matter of Dupree M. (Samantha Q.) (2019 NY Slip Op 02523)





Matter of Dupree M. (Samantha Q.)


2019 NY Slip Op 02523


Decided on April 3, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 3, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
JEFFREY A. COHEN
COLLEEN D. DUFFY
FRANCESCA E. CONNOLLY, JJ.


2017-02752
 (Docket No. N-2253-17)

[*1]In the Matter of Dupree M. (Anonymous), nonparty-appellant. Suffolk County Department of Social Services, petitioner-respondent; 
and
Samantha Q. (Anonymous), respondent-respondent; Unkechaug Indian Nation, nonparty-respondent.


Arza R. Feldman, Uniondale, NY, attorney for the child, the nonparty-appellant.
Dennis M. Brown, County Attorney, Central Islip, NY (Karin A. Bohrer of counsel), for petitioner-respondent.
Law Offices of Tela L. Troge, PLLC, Southampton, NY (Kelly D. Dennis of counsel), for respondent-respondent.
Law Offices of James F. Simermeyer, P.C., East Elmhurst, NY, for nonparty-respondent.



DECISION & ORDER
In a proceeding pursuant to Family Court Act article 10, the child appeals from an order of the Family Court, Suffolk County (Theresa Whelan, J.), dated February 10, 2017. The order granted the application of nonparty Unkechaug Indian Nation to dismiss the proceeding and transfer jurisdiction over the proceeding to it pursuant to the Indian Child Welfare Act of 1978 (25 USC § 1901 et seq. ).
ORDERED that the order is affirmed, without costs or disbursements.
The respondent mother and her husband (hereinafter the father) are the parents of the subject child, who was born in January 2017. The father was a member of the Unkechaug Indian Nation (hereinafter the Unkechaug) and the Shinnecock Tribe. In February 2017, the Suffolk County Department of Social Services (hereinafter the DSS) filed a petition against the mother alleging that she derivatively neglected the child based on a prior finding of neglect entered against her in 2013 with respect to her older child. When the parties appeared before the Family Court on the petition, the mother's attorney requested that the proceeding be transferred to the Unkechaug tribal council, and a representative of the Unkechaug, who was present pursuant to the Indian Child Welfare Act of 1978 (25 USC § 1901 et seq. ; hereinafter the ICWA) (see 25 USC § 1912[a]; cf. Matter of New York City Dept. of Social Sevs. v Oscar C., 192 AD2d 280, 285 [noting the tribe's right to intervene in a child neglect proceeding]), made the same request. The only opposition to the application was interposed by the attorney for the child. By order dated February 10, 2017, the Family Court granted the Unkechaug's application and, inter alia, transferred jurisdiction over the proceeding to the [*2]Unkechaug. The attorney for the child appeals.
The ICWA (25 USC §§ 1901-1963) was enacted by Congress in 1978 to address the removal of "an alarmingly high percentage" of American Indian children from their families, reported at that time to be 25% to 35% of all American Indian children nationwide, by nontribal public and private agencies (25 USC § 1901[4]; HR Rep 95-1386, 95th Cong, 2d Sess at 9, reprinted in 1978 US Code Cong & Admin News at 7530). The ICWA's stated purpose is "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs" (25 USC § 1902). After the passage of the ICWA in 1978, New York amended section 39 of the Social Services Law and promulgated state regulations (see 18 NYCRR 431.18) to comply with federal standards.
Although the ICWA applies only to federally recognized tribes (see 25 USC § 1903[8]), and the Unkechaug do not appear to be so recognized, Social Services Law § 39 and 18 NYCRR 431.18 (hereinafter together the New York ICWA) expand the federal definition to include recognition of "[a]ny Indian tribe designated as such by the state of New York" (Social Services Law § 39), and to include federally recognized tribes and tribes recognized by the State of New York or by any other state (see 18 NYCRR 431.18). The Unkechaug is so recognized by the State of New York (see Indian Law § 151), and accordingly, the ICWA is applicable to the Unkechaug.
"At the heart of the ICWA are its provisions concerning jurisdiction over Indian child custody proceedings" (Mississippi Band of Choctaw Indians v Holyfield , 490 US 30, 36; see 25 USC §§ 1903, 1911). In order to determine where jurisdiction is properly placed, the ICWA sets out a dual jurisdictional scheme that turns on where the American Indian child resides or is domiciled (see 25 USC § 1911). Pursuant to the ICWA,"[a]n Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law" (25 USC § 1911[a]). Where, as here, the child is not domiciled on a tribal reservation, the ICWA "creates concurrent but presumptively tribal jurisdiction" (Mississippi Band of Choctaw Indians v Holyfield , 490 US at 36; see 25 USC § 1911[b]). Accordingly, in the case of children not domiciled on the reservation, on application of either the parent or the tribe, "state-court proceedings for foster care placement or termination of parental rights are to be transferred to the tribal court, except in cases of good cause,' objection by either parent, or declination of jurisdiction" (Mississippi Band of Choctaw Indians v Holyfield , 490 US at 36; see Pitre v Shenandoah , 2015 WL 667540, *4, 2015 US Dist. LEXIS 18604, *12 [ND NY, No. 5:14-CV-293], affd 633 Fed Appx 44 [2d Cir]).
The ICWA provides that "the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point" in a proceeding to which the ICWA applies (25 USC § 1911[c]). Congress authorized the Department of the Interior, Bureau of Interior Indian Affairs (hereinafter the DOI), to promulgate rules and regulations "as may be necessary to carry out the provisions of [ICWA]" (25 USC § 1952). The current regulations define the term "child-custody proceeding" as "any action, other than an emergency proceeding, that may culminate in" foster-care placement, termination of parental rights, preadoptive placement, and adoptive placement (25 CFR 23.2[11][1]). "An action that may culminate in one of these four outcomes is considered a separate child-custody proceeding from an action that may culminate in a different one of these four outcomes" (25 CFR 23.2[11][2]). The DOI explained that "[t]he final rule uses the phrase may culminate in one of the following outcomes,' rather than the less precise phrase involves,' used in the draft rule, in order to make clear that ICWA requirements would apply to an action that may result in one of the placement outcomes, even if it ultimately does not. For example, ICWA would apply to an action where a court was considering a foster-care placement of a child, but ultimately decided to return the child to his parents. Thus, even though the action did not result in a foster-care placement, it may have culminated in such a placement and, therefore, should be considered a child-custody proceeding' under the statute" (81 Fed Reg 38778-01 at 38799).
In conjunction with the final rule, on December 12, 2016, the DOI published Guidelines for Implementing the Indian Child Welfare Act (hereinafter the 2016 Guidelines). Indeed, the 2016 Guidelines provide, among other things, that "if a proceeding seeks to terminate the parental rights of one parent, that proceeding falls within ICWA's definition of child-custody proceeding' even if the child will remain in the custody of the other parent or a step-parent" (2016 Guidelines [B][2]). Still further, the 2016 Guidelines provide that "[i]f the child may be involuntarily removed from the parents or Indian custodian or the child may be involuntarily placed, then ICWA applies to the proceeding. If the parent or Indian custodian does not agree to the removal or placement, or agrees only under threat of the child's removal, then the proceeding is involuntary" (id .).
Social Services Law § 39(6) provides that "[i]n any state court child custody proceeding involving the foster care placement of, or termination of parental rights to an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe; provided, however, that such transfer shall be subject to declination by the tribal court of such tribe."
The New York regulations, as amended on March 15, 2017, mirror the definition of "child custody proceedings" under the ICWA and the federal regulations. Any action that "may culminate" in, inter alia, a "foster care placement" or "termination of parental rights" triggers the ICWA and the presumptive tribal jurisdiction over the proceedings (18 NYCRR 431.18[a][4]).
In the instant matter, the DSS filed a petition alleging neglect pursuant to article 10 of the Family Court Act. The stated purpose of an article 10 proceeding is "to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being. It is designed to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child so that his needs are properly met" (Family Ct Act § 1011).
Accordingly, under the circumstances presented, we discern no reason to disturb the Family Court's transfer order.
Contrary to the contention of the attorney for the child, the fact that the definition of "child custody proceedings" under 18 NYCRR 431.18(4) was not amended to include the language "may culminate in" until March 2017, approximately one month after the filing of the instant petition, is of no consequence. The ICWA and the federal regulations explicitly state that "where applicable State or other Federal law provides a higher standard of protection to the rights of the parent or Indian custodian than the protection accorded under the Act, ICWA requires the State or Federal court to apply the higher State or Federal standard" (25 CFR 23.106; see 25 USC § 1921). At the time the subject petition was filed, the term "child-custody proceeding" was defined under the federal regulations as "any action, other than an emergency proceeding, that may culminate in" foster care placement, termination of parental rights, preadoptive placement, and adoptive placement (25 CFR 23.2[11]).
The attorney for the child's remaining contention is without merit.
CHAMBERS, J.P., COHEN, DUFFY and CONNOLLY, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court