People v Jony (2023 NY Slip Op 04674)

People v Jony

2023 NY Slip Op 04674

Decided on September 20, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on September 20, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
PAUL WOOTEN
BARRY E. WARHIT
LILLIAN WAN, JJ.

2019-08322

[*1]The People of the State of New York, respondent,
v
Hassan M. Jony, appellant. Jonathan Rosenberg, PLLC, Brooklyn, NY, for appellant.

Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Sharon Y. Brodt, and Aurora Alvarez-Calderon of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from an order of the Supreme Court, Queens County (Bruna L. DiBiase, J.), dated May 31, 2019, which, after a hearing, designated him a level two sex offender pursuant to Correction Law article 6-C.
ORDERED that the order is affirmed, without costs or disbursements.
The defendant was convicted, upon his plea of guilty, of possessing a sexual performance by a child. Following a hearing pursuant to the Sex Offender Registration Act (Correction Law art 6-C; hereinafter SORA), the Supreme Court assessed the defendant 85 points on the risk assessment instrument, denied his application for a downward departure from his presumptive risk level, and designated him a level two sex offender. On appeal, the defendant challenges the court's assessment of 20 points under risk factor 7 (relationship with the victim) and the denial of his application for a downward departure.
In establishing a defendant's risk level under SORA, the People bear the burden of establishing facts supporting the determination sought by clear and convincing evidence (see Correction Law § 168-d[3]; People v Levy, 192 AD3d 928, 929). "In assessing points, evidence may be derived from the defendant's admissions, the victim's statements, evaluative reports completed by the supervising probation officer, parole officer, or corrections counselor, case summaries prepared by the Board of Examiners of Sex Offenders (hereinafter the Board), or any other reliable source, including reliable hearsay" (People v Crandall, 90 AD3d 628, 629; see People v Mingo, 12 NY3d 563, 573; Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 5 [2006] [hereinafter Guidelines]).
The Guidelines provide for the assessment of 20 points under risk factor 7 when "the offender's crime (i) was directed at a stranger or a person with whom a relationship had been established or promoted for the primary purpose of victimization or (ii) arose in the context of a professional or avocational relationship between the offender and the victim and was an abuse of such relationship" (Guidelines at 12). The Guidelines explain that "[e]ach of these situations is one in which there is a heightened concern for public safety and need for community notification" (id.). The Commentary to the Guidelines "emphasizes that this 'is not meant to minimize the seriousness of cases where the relationship is other than that of stranger or professional—e.g., familial. The need for community notification, however, is generally greater when the offender strikes at persons who do not know him well or who have sought out his professional care'" (People v Cook, 29 NY3d 121, 126, quoting Guidelines at 12 n 8).
Here, contrary to the defendant's contention, the Supreme Court properly assessed 20 points under risk factor 7. The People established, by clear and convincing evidence, including the sworn criminal complaint, the probation department's presentence report, and the complainant's written statement, that the defendant's relationship with the complainant had been established or promoted for the primary purpose of victimization. The People's evidence demonstrated that, over the course of approximately six months, the defendant, who was then 22 years old, engaged in sexually explicit communications with the complainant over Facebook, beginning when the complainant was 13 years old and continuing after she turned 14 years old. The defendant admitted that, during this period, he knew the complainant's age. The People's evidence demonstrated that the defendant told the complainant to send him nude photographs and videos of herself, and that the complainant sent the defendant a combination of approximately 73 sexually explicit images and videos of herself. The complainant alleged that the defendant also asked the complainant to meet him for oral sex, and that the defendant engaged in oral sex with her on three occasions. This evidence was sufficient to support the assessment of points under subsection (i) of risk factor 7.
We disagree with the defendant and our dissenting colleague's assertion that the People failed to meet their burden of proof with respect to risk factor 7. The defendant and our dissenting colleague cite to People v Cook (29 NY3d at 121), wherein the Court of Appeals determined that the defendant was improperly assessed points under risk factor 7 based upon his relationship with the four child victims, who were between the ages of 5 and 12 at the time of the abuse (see id. at 123). In Cook, however, the record reflected that the defendant had long-term, preexisting relationships with the subject children, which commenced during their infancy, due to his close and longtime friendships with their parents, who were his childhood friends (see id. at 127, 129). The defendant regularly spent substantial amounts of time with the children and their families, babysat the children, and did not begin to offend against them until the eldest child was approximately 11 years old (see id. at 126, 129-130). Under those circumstances, the Court of Appeals found the evidence did not support the Supreme Court's determination that the defendant promoted his relationships with the children for purposes of victimization (see id. at 130).
Here, in contrast, the record indicates that the defendant did not have a long-standing preexisting relationship with the complainant's parents, and was not involved in the complainant's life since her infancy. Rather, the defendant had worked with the complainant's uncle and was invited to the uncle's house for lunch, where he met the complainant. Thus, this case is readily distinguishable from the circumstances of Cook. Contrary to the position of our dissenting colleague, the fact that the defendant's initial contact with the complainant was unplanned and in person, rather than through the internet, is not determinative with respect to the assessment of points [*2]under risk factor 7 based on an offender's establishment or promotion of a relationship with the victim for the primary purpose of victimization (see People v Gifford, 144 AD3d 1678, 1679; People v Walker, 125 AD3d 1516, 1517; People v Mollenkopf, 54 AD3d 1136, 1137; People v Taylor, 48 AD3d 775, 776; People v Grosfeld, 35 AD3d 692, 693). The Guidelines, which were created in 1996, do not limit the assessment of points under those circumstances to situations where the offender and the victim initially met online.
Contrary to our dissenting colleague's further position, our analysis does not result in burden shifting, but rather, relies on logic and reasonable inferences to be drawn from the evidence. The record is clear that, after meeting the complainant, the defendant started sending her text messages, told her that "he likes [her]," and "friended" her on Facebook. The defendant thereafter engaged in the sexually explicit messaging with the complainant over Facebook, despite his admitted awareness of her age, and requested that she send him the explicit images and meet him for oral sex. The complainant reported that those meetings took place in the early morning hours in a graveyard. Under these circumstances, the only reasonable view of the record is that the defendant established or promoted a relationship with the subject child in order to victimize her and did not redirect a close and involved non-sexual relationship (see People v Lashomb, 161 AD3d 1465, 1466-1467; People v Gifford, 144 AD3d at 1679; People v Mollenkopf, 54 AD3d at 1137; see also People v Krahmalni, 170 AD3d 444; cf. People v Cook, 29 NY3d at 130). Therefore, the Supreme Court properly assessed the defendant 20 points under risk factor 7.
The Supreme Court also properly denied the defendant's application for a downward departure. A defendant seeking a downward departure from the presumptive risk level has the initial burden of "(1) identifying, as a matter of law, an appropriate mitigating factor, namely, a factor which tends to establish a lower likelihood of reoffense or danger to the community and is of a kind, or to a degree, that is otherwise not adequately taken into account by the Guidelines; and (2) establishing the facts in support of its existence by a preponderance of the evidence" (People v Wyatt, 89 AD3d 112, 128; see People v Gillotti, 23 NY3d 841, 861; see also Guidelines at 4). If the defendant makes that twofold showing, the court must exercise its discretion by weighing the mitigating factor to determine whether the totality of the circumstances warrants a departure to avoid an overassessment of the defendant's dangerousness and risk of sexual recidivism (see People v Gillotti, 23 NY3d at 861; People v Champagne, 140 AD3d 719, 720).
A downward departure may be warranted where the victim's lack of consent is due only to inability to consent by virtue of age, and scoring 25 points under risk factor 2, for sexual contact with the victim, results in an overassessment (see Guidelines at 9; People v Blount, 195 AD3d 956, 957). Here, a downward departure is not warranted on this ground considering, among other things, the age disparity between the then 22-year-old defendant and the then 13 to 14-year-old complainant (see People v Permenter, 208 AD3d 905, 907; People v Blount, 195 AD3d at 957).
Accordingly, the Supreme Court properly designated the defendant a level two sex offender.
IANNACCI, J.P., WARHIT and WAN, JJ., concur.
WOOTEN, J., dissents, and votes to reverse the order, on the law, and to designate the defendant a level one sex offender, with the following memorandum:
A. Factual Background
On October 5, 2018, the defendant entered a plea of guilty to one count of possessing a sexual performance by a child (Penal Law § 263.16). The conviction was premised on the defendant's possession of nude photographs of a child less than 16 years old (hereinafter the complainant). According to the presentence report, the defendant stated with regard to the complainant that "[o]ur families knew each other."
On May 31, 2019, the defendant was sentenced to a period of 10 years of probation. Immediately following the imposition of the defendant's sentence, the Supreme Court conducted a hearing pursuant to the Sex Offender Registration Act (Correction Law art 6-C; hereinafter SORA), at which the court considered a risk assessment instrument (hereinafter RAI) prepared by the People.
The People's RAI assessed a total of 85 points, which would presumptively result in a level two sex offender classification, including the assessment of 20 points under risk factor 7 (relationship with victim: established for purpose of victimization). In a notice pursuant to Correction Law § 168-d(3), the People alleged, inter alia, that the assessment of 20 points under risk factor 7 was warranted because the complainant stated that she began communicating with the defendant through Facebook on October 23, 2017; the Facebook messages were of a sexual nature; the defendant met with the complainant "on three separate occasions" for the purpose of engaging in sexual conduct; and since "there was no substantial contact" between the defendant and the complainant "prior to this conduct, . . . the defendant's sole purpose for promoting this relationship with the complainant was to engage her in a sexual relationship."
At the SORA hearing on May 31, 2019, the People "concede[d] that [the defendant] was a friend of the [complainant's] family," but argued that 20 points should nevertheless be assessed under risk factor 7 because "there was no evidence of substantial non-sexual conduct between the defendant and the complainant prior to him engaging in communications with her" via Facebook. The defendant's attorney objected to the assessment of 20 points under risk factor 7, asserting, inter alia, that "[w]hile the sexual contact may have happened within a three-month time span, [the defendant and the complainant] did know each other for longer." In response, the People acknowledged that "there was in fact a relationship here prior." The defendant's attorney then indicated that "[t]he relationship was commenced by [the defendant's] acquaintance and . . . co-worker relationship with the complainant's uncle, which actually was the start of how they got to know each other," and that the complainant's uncle had "invited [the defendant] to the [complainant's] house for a lunch," "and that's how the complainant and [the defendant] got to know each other." The People did not contest these representations.
The Supreme Court found that "the People have shown by reliable hearsay" that 20 points should be assessed under risk factor 7, without any further explanation. Upon accepting all of the points assessed in the People's RAI, a total of 85 points, the court designated the defendant a level two sex offender. The defendant appeals.
B. Risk Factor 7
The Guidelines (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, risk factor 7 [2006] [hereinafter Guidelines]) provide that 20 points should be assessed under risk factor 7 if, inter alia, "[t]he offender's crime . . . was directed at a stranger or a person with [*3]whom a relationship had been established or promoted for the primary purpose of victimization." The Commentary to the Guidelines explains that this risk factor arises from "a heightened concern for public safety and need for community notification," which is "generally greater when the offender strikes at persons who do not know him [or her] well" (id. at 12 & n 8). "It is plain from the face of factor 7 that it is meant to focus on the relationship, or absence of a relationship, between the offender and his [or her] victim before the crime was committed" (People v Johnson, 11 NY3d 416, 420).
The Commentary notes that "[t]he phrase 'established or promoted for the primary purpose of victimization' is adopted from the Act itself" (Guidelines at 12, quoting Correction Law § 168-a[9]). The Commentary indicates, as examples, that while "[a]n uncle who offends against his niece generally would not fall into this category," "[a] scout leader who chooses his [or her] profession or vocation to gain access to victims and 'grooms' his [or her] victims before sexually abusing them would qualify" (Guidelines at 12).
In People v Cook (29 NY3d 121, 128), the Court of Appeals discussed the circumstances under which a defendant may be found to have "promoted" a relationship "for the primary purpose of offending." The Court explained that "[i]t is clear that points were not intended to be assessed under [risk factor 7] based on grooming, in and of itself," but rather "the assessment of those points should be determined based on the nature of the relationship in which the grooming takes place" (id. at 128). The Court added that "[i]f risk factor 7 were interpreted to require the assessment of 20 points for every offender who groomed a victim—in addition to offenders who are strangers or professionals—then the vast majority of offenders against child victims would be assessed those points," and "[s]uch a blanket assessment of points" would be "inconsistent with the purpose of the Guidelines, namely, to require enhanced community notification where abuse occurs in more distant relationships, which indicate an increased risk of reoffending" (id.). The Court in Cook determined that since the defendant had preexisting relationships with the child victims as a "close family friend," the evidence did not demonstrate that the defendant "'promoted'" his relationships with the children for purposes of victimization, "as opposed to redirecting his long-standing close and involved relationships with them in such a way as to allow for sexual abuse" (id. at 129, 130).
In contrast to the circumstances in Cook, courts have generally determined that it is appropriate to assess 20 points under risk factor 7 on the ground that the defendant "established or promoted" a relationship with the victim for the primary purpose of victimization where the defendant met the victim online (see People v Fuhrtz, 180 AD3d 944, 946 ["it can reasonably be inferred that the defendant's online relationship with the victim was established for the purpose of victimizing her" where "it was undisputed that the defendant committed the subject sex offenses . . . on the same day he responded to an online adult services advertisement posted by the victim"]; People v Burrowes, 177 AD3d 1005, 1006, 1006-1007 ["court properly inferred that the defendant's online relationship with the victims was established for the purpose of victimizing them" where defendant "met the victims online"]; People v Krahmalni, 170 AD3d 444, 444 [People demonstrated that defendant established relationship with child victim for the purpose of victimization where "defendant met the victim online" and "initiated sexual activity immediately upon meeting her in person"]; People v Lashomb, 161 AD3d 1465, 1466-1467 [People demonstrated that defendant established or promoted relationship for primary purpose of victimization where defendant met the child victim online and exchanged text messages of a sexual nature before defendant accepted victim's invitation to come to her home]; People v Duart, 84 AD3d 908, 909 [relationship was [*4]promoted for primary purpose of victimization where defendant met child through the internet and persuaded her to send him nude photographs of herself]; People v Helmer, 65 AD3d 68, 69 [20 points were properly assessed under risk factor 7 where defendant met victim online and it was undisputed that they had sexual relations on the same day of their first face-to-face meeting]).
Courts have generally declined to uphold the assessment of 20 points under risk factor 7 on the ground that the defendant "established or promoted" a relationship with the victim for the primary purpose of victimization where the defendant met the victim in person, without having planned the meeting, prior to any interactions of a sexual nature (see People v Lopez, 192 AD3d 1050, 1051 [People failed to demonstrate that defendant established relationship with the victim for primary purpose of victimization where defendant knew victim prior to asking her out on dates as a regular customer at the restaurant where victim worked]; People v Perez, 165 AD3d 1628, 1628-1629 [People failed to demonstrate that defendant established or promoted a relationship for the primary purpose of victimization where defendant met child victim while working at a local Red Cross, and the defendant later communicated with the victim through social media and by telephone before sexual contact occurred]; People v Montes, 134 AD3d 1083 [People failed to establish that defendant established or promoted relationship with his step-granddaughters for primary purpose of victimization where defendant had access to children before becoming foster parent to them]; People v Birch, 114 AD3d 1117, 1118 [no clear and convincing evidence that defendant formed relationship for primary purpose of victimization where defendant met child victim while waiting tables at a restaurant, they exchanged phone numbers, and then they regularly sent text messages to each other]; People v Johnson, 104 AD3d 1321, 1321-1322 [People presented no evidence that defendant, who met the victim at a party, targeted the victim for the primary purpose of victimizing her]; People v McGraw, 24 AD3d 525, 526 [20 points were improperly assessed under risk factor 7 where the victim knew defendant prior to sexual abuse because defendant was a friend of the victim's nephew and the victim's family had helped defendant move furniture]).
The reason to distinguish the line of cases in which a defendant met a child victim through the internet from those in which a defendant's first interaction with the victim was an unplanned in-person encounter is readily apparent: whereas there is a reasonable basis to infer that a defendant initiated contact with and targeted a victim for sexual purposes when the contact originated online, the latter category involves chance meetings in which there is no indication the defendant had a predatory motive at the outset. While it is certainly conceivable in cases involving unplanned in-person meetings that the defendant immediately decided to establish or promote a relationship with the victim for the purpose of victimization, courts would be forced to speculate as to the mental state of the defendant absent any evidence in the record that the defendant promptly engaged in interactions of a sexual nature.
Furthermore, in evaluating the propriety of assessing 20 points under risk factor 7, courts must be mindful that it is the People's burden to establish, by clear and convincing evidence, that the defendant established or promoted a relationship for the primary purpose of victimization (see People v Cook, 29 NY3d at 129; Correction Law § 168-n[3]). "[T]he 'clear and convincing evidence' standard [is] an 'intermediate standard' between the high standard of 'beyond a reasonable doubt' used in criminal proceedings and 'fair preponderance' used in ordinary civil proceedings" (Matter of New York City Dept. of Social Servs. v Oscar C., 192 AD2d 280, 283-284, quoting Santosky v Kramer, 455 US 745, 756). "This intermediate standard of proof has been deemed necessary 'to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with a significant deprivation of liberty or stigma'" (People v Wyatt, [*5]89 AD3d 112, 127, quoting Santosky v Kramer, 455 US at 756; see People v Gillotti, 23 NY3d 841, 862).
Thus, where the People fail to present any evidence, let alone clear and convincing evidence, showing the nature of the relationship between a defendant and a victim, it is improper for the Supreme Court to assess 20 points under risk factor 7 (see People v Green, 112 AD3d 801, 802).
C. Analysis
Contrary to the People's contention, they failed to meet their burden of establishing, by clear and convincing evidence, that the defendant established or promoted a relationship with the complainant for the primary purpose of victimization. Here, there is no indication in the record that the defendant initially met the complainant for any sexual purpose, or even that the defendant knew his co-worker, the complainant's uncle, had a niece living in the household when the defendant came to the complainant's home for lunch and met the complainant. Moreover, there is no indication in the record as to when the initial meeting between the complainant and the defendant at the complainant's home occurred. On this limited record, while it is conceivable the complainant met the defendant mere hours or days before the defendant began communicating with her online, it is equally possible the complainant first met the defendant in her home months or even years before the defendant started interacting with the complainant online and exchanging messages of a sexual nature. Likewise, there is no indication in the record as to approximately how many times the defendant came to the complainant's home and interacted with the complainant before the sexually explicit messages were exchanged.
Furthermore, while the People conceded at the SORA hearing that "there was in fact a relationship here prior" to any conduct of a sexual nature, the People provided no information whatsoever as to the nature of that relationship. Thus, this case is similar to People v Green (112 AD3d 801), in which the nature of the defendant's relationship with the victim prior to their sexual interaction was "unknown," and thus, there was no basis in the record to determine that "the defendant's purpose in meeting or developing a relationship with the victim was to victimize him" (id. at 802). In the absence of any evidence as to the nature or duration of the complainant's relationship with the defendant prior to the exchange of sexually explicit messages on Facebook, there is no basis for this Court to determine, without speculation, whether the defendant "established or promoted" a relationship with the complainant for the purpose of victimization, as opposed to "redirecting" a relationship with the complainant "in such a way as to allow for sexual abuse" (People v Cook, 29 NY3d at 128, 130).
Contrary to the assertion made by my colleagues in the majority, I do not conclude that the circumstances of this case are akin to those in People v Cook (29 NY3d 121). Instead, I opine that the record in this case is not sufficient to determine whether the defendant had "a long-standing relationship" with the complainant or her family. To the extent my colleagues suggest that the assessment of points under risk factor 7 is appropriate so long as the defendant did not have a "long-standing preexisting relationship" (emphasis added), that determination is not supported by the Guidelines, which provide for the assessment of points under that risk factor where "[t]he offender's crime . . . was directed at a stranger or a person with whom a relationship had been established or promoted for the primary purpose of victimization." The Guidelines do not provide that it is appropriate to assess points under risk factor 7 if a preexisting relationship with the victim was not "long-standing." Moreover, I disagree with my colleagues in the majority that the record [*6]in this case was even sufficient to determine that "the defendant did not have a long-standing preexisting relationship," as there is no indication in the record as to how long the defendant knew the complainant or her family prior to the exchange of sexually explicit messages on Facebook. Rather, based upon the limited record presented there is no basis to draw any conclusions as to the duration or nature of the relationship prior to the exchange of sexually explicit messages on Facebook.
Notably, the People could not meet their burden merely by arguing at the hearing that "there was no evidence of substantial non-sexual conduct between the defendant and the complainant prior to him engaging in communications with her" via Facebook (emphasis added). Since it was the People's burden to establish, by clear and convincing evidence, that the defendant established or promoted his relationship with the complainant for the primary purpose of victimization—and not the defendant's burden to demonstrate that he did not establish or promote a relationship with the complainant for the primary purpose of victimization—the People's assertion that 20 points were properly assessed under risk factor 7 based upon "no evidence of substantial non-sexual conduct" is without merit. Crediting the People's position would improperly shift the initial burden to the defendant to come forward with evidence that the defendant and the complainant had a substantial non-sexual relationship for a significant period of time prior to the exchange of inappropriate messages. Moreover, permitting the assessment of points under risk factor 7 based solely on a conclusory and unsubstantiated statement by the People that there was "no evidence" of a prior relationship would enable the People to meet their burden without presenting any evidence, let alone clear and convincing evidence, that the defendant established or promoted a relationship for the primary purpose of victimization.
Indeed, it would not have been difficult for the People to meet their burden if the defendant had first met the complainant at her home shortly before the exchange of messages by simply disclosing the date of that meeting. Likewise, assuming, arguendo, the complainant did not have any substantial interactions with the defendant prior to the exchange of messages, the People could have presented a statement from the complainant to that effect. However, the People did not indicate, let alone present any evidence, that the defendant had no substantial interactions with the complainant prior to the exchange of messages; rather, the People asserted that there was "no evidence of substantial non-sexual conduct" (emphasis added) prior to the exchange of messages on Facebook. Moreover, the People never disputed the assertions of the defendant's attorney at the hearing that "the families knew each other" prior to the interactions of a sexual nature, and that the defendant and the complainant "did get to know each other for longer."
My colleagues in the majority do not identify any evidence presented by the People regarding either the nature or duration of the relationship between the defendant and the complainant prior to the exchange of sexually explicit messages on Facebook, as necessary to demonstrate that the defendant's relationship with the complainant was established for the primary purpose of victimization. Rather, my colleagues note that some time "after meeting the complainant" (emphasis added), the defendant exchanged sexually explicit messages with the complainant on Facebook, which occurred in an indeterminate amount of time after the initial meeting. Contrary to the determination of my colleagues in the majority, the mere fact that sexually explicit messages on Facebook were ultimately exchanged, without more, is insufficient to satisfy the People's burden to demonstrate that the defendant's relationship with the complainant was established for the primary purpose of victimization.
Further, the People's vague statement at the hearing that "there is a period of time that we would consider grooming time," without any details, was insufficient to meet the People's burden of demonstrating that the defendant promoted a relationship with the complainant for the primary purpose of victimization, as the Court of Appeals has held that "points were not intended to be assessed under [risk factor 7] based on grooming, in and of itself" (People v Cook, 29 NY3d at 128).
Consequently, the People failed to establish, by clear and convincing evidence, that the defendant established or promoted his relationship with the complainant for the primary purpose of victimization. Thus, 20 points must be deducted from the total risk assessment of 85 points, which places the defendant's point score within the range of a level one sex offender.
Accordingly, I vote to reverse the order and to designate the defendant a level one sex offender.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court